Note.—See under (1) 37 Cyc. p. 1185 (Anno). (2) 37 Cyc. p. 1185 (Anno). (3) 28 Cyc. pp. 1540, 1546; anno. 37 L. R. A. (N. S.) 1061; 41 A. L. R. 791; 19 R. C. L. p. 978; 3 R. C. L. Supp. p. 989; 4 R. C. L. Supp. p. 1403; 6 R. C. L. Supp. p. 1152. (4) 28 Cyc. pp. 1673, 1695.

---

### SIMPSON v. HILL et al.

No. 18968. Opinion Filed Dec. 3, 1927.

On Rehearing, Dec. 15, 1927.

(Syllabus.)

1. **Statutes—Initiated Measure — Special Election—Submission by Legislature or Governor.**

An affirmative vote by the people of the state, at a special election, gives no force and effect to an initiated measure, unless the same is ordered submitted at such special election by the Legislature or the Governor of the state. (Section 3, art. 5, Oklahoma Constitution.)

2. **States—Legislature—Component Houses —Powers of House of Representatives— Impeachment.**

Article 5 of the Constitution of the state creates the Legislative Department. It is composed, by reason of section 1 thereof, of the House of Representatives and the Senate. The Legislature, as such, comprises both houses. Each is an integral part of the Legislature, and neither is an entity of government without the other. Under the provisions of said article 5, and section 3 of art. 8, the House of Representatives, when duly convened as provided by the Constitution, has inquisitorial power, and may take evidence and return and file with the Senate, impeachment charges.

3. **Same—Separate Powers of Three Departments of State Government—Legislature Without Power to Convene Itself in Extraordinary Session.**

Article 4 of the Constitution divides the departments of state government into legislative, executive and judicial; the last clause providing: "And neither shall exercise powers properly belonging to either of the others." This is an inhibition against the Legislature, or any members thereof, undertaking to perform a prerogative given by the Constitution to another department of state government. Article 6 of the Constitution creates the Executive Department, and makes the Governor the chief executive officer of the state. Section 7 thereof reads as follows:

"Extraordinary or Special Sessions. The Governor shall have power to convoke the Legislature, or the Senate only, on extraordinary occasions. At extraordinary sessions no subject shall be acted upon except such as the Governor may recommend for consideration."

This section vests within the Chief Executive the discretion of calling the Legislature into extraordinary session, and under said inhibition contained in article 4, the Legislature is prohibited from exercising this authority, and its attempt to do so is without sanction in the Constitution of the state.

4. **Same.**

The powers of the Legislature are such as are given it expressly, or by clear implication, in the Constitution. It possesses no inherent power to convene, since the time and method of its being convened are expressly set out in the Constitution, and clearly negatives its convening or being convened in any other method. Powers not expressly, or by necessary implication granted, inhere in the people of the state. In the absence of a constitutional provision authorizing the Legislature of the state to convene itself, it cannot do so, and any acts or intended acts of a member, or members thereof, if so assembled, are without authority of law, whether it be for legislative or inquisitorial purposes.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Injunction by John A. Simpson against E. P. Hill, Tom Johnson, H. Tom Kight, Robert C. Graham, and Leslie Cardwell. Judgment for defendants, and plaintiff brings error. Affirmed.

F. H. Reily, Claude Briggs, Clarence Lohman, Warren K. Snyder, and C. B. Stuart, for plaintiff in error.

Earl A. Brown, Freeling & Box, E. P. Hill, and H. Tom Kight, for defendants in error.

BRANSON, C. J. The appeal is from the district court of Oklahoma county. In this court the parties appeared as there.

The plaintiff, John A. Simpson, as a taxpayer, sought an injunction against the defendants to prevent their incurring any expense or obligation against the state, or which would or might cause the state, or officers thereof, to incur expense in numerous and vexatious suits, by reason of a purported call of an extraordinary session of the Eleventh Legislature of the state of Oklahoma. The purported call, as pleaded, is in words and figures as follows:

"To the Members of the Eleventh Legislature of the State of Oklahoma:

"In obedience to a petition signed by a majority of the members of the House of Representatives of the Eleventh Legislature. asking that the Legislature be convened for purposes authorized by article 8 of the Constitution of the state of Oklahoma, and the undersigned being in possession of such request, do hereby call the Eleventh Legislature in extraordinary session to assemble at the State Capitol in Oklahoma City, on the 6th day of December, 1927, at 12:00 o'clock noon.

"This call is made under the inherent power and authority of the legislative branch of this government to convene at any time they may see fit, for such purposes as are named in the call, and upon the further authority of section 1 of article 8A of the Constitution of the state of Oklahoma, and other constitutional and statutory provisions of said state.

"This meeting of the Legislature is for the purpose of carrying into effect the provisions of article 8 of the Constitution of the state of Oklahoma.

"Given under our hands and seals this 21st day of November, 1927.

"E. P. Hill,
"Representative of Pittsburg County.

"Tom Johnson,
"Representative of Pushmataha County.

"H. Tom Kight,
"Representative of Rogers County.

"Robert. C. Graham,
"Representative Fifth District of Oklahoma County."

Plaintiff alleges further that the defendants intend to interfere with the orderly and legal performance of the duties of the officers of the executive and judicial departments of the state government, in an unlawful and vexatious manner, unless the said defendants are prevented by order of court from carrying out the intended organization

of the Eleventh Legislature into an extraordinary session under the said call.

It is clear from the oral argument that the defendants assume to assemble the Legislature and organize the same, by reason: First, of Initiative Bill No. 79; and second, by reason of the alleged inherent power of the Legislature to convene itself for inquisitorial purposes, on its own initiative. Whether the first pretended authority really exists depends upon whether Initiative Bill No. 79 has any force as law.

On the 13th day of August, 1923, the Honorable J. C. Walton, as Governor of the state of Oklahoma, issued his proclamation under authority and by direction of the Legislature. calling a special election for October 2, 1923, for a vote on certain constitutional amendments proposed by the Legislature of the state, at its biennial session beginning the first Tuesday after the first Monday in January, 1923. After said proclamation was issued, initiative petitions were filed proposing the provisions found in said Initiative Bill No. 79, which, in effect, provided that on a majority petition of the elected members of the Legislature it could convene on a day in the petition set. It was placed on a ballot at said special election, and received a majority vote. The Legislature did not order that this initiated measure be submitted at the said election. Neither did the Governor issue any proclamation or order directing the submission of the same to the people of the state of Oklahoma on said date, or on any other date when an election was held. There being no order of the Legislature, or the Governor, the question is, Did the affirmative vote in favor of the said initiative measure give it any force and effect as law?

It is settled by the authorities that the Constitution of a state cannot be amended, except in the exact method provided by the Constitution itself. Some of the authorities supporting this proposition are: City of Chicago v. Reeves, 220 Ill. 274, 77 N. E. 237; Warfield v. Vandiver, 101 Md. 78, 60 Atl. 538, 4 Ann Cas. 692; Commonwealth v. Bowman, 191 Ky. 647, 231 S. W. 35; Sims v. Sawyers, 85 W. Va. 245. 101 S. E. 467; Johnson v. Craft, 205 Ala. 386, 87 South. 375; State v. Donald, 160 Wis. 21, 151 N. W. 331; Crawford v. Gilchrist, 64 Fla. 41, 59 South. 963, Ann Cas. 1914B, 916; State ex rel. Atty. Gen. v. Board of Equalization, 107 Okla. 118, 230 Pac. 743. If the purpose and effect of Initiative Bill No. 79 was to amend article 8 of the Constitution, it falls under the ban of the settled law.

Sections 2 and 3 of article 5 of the Constitution deal with the question of initiating measures and referring same to a vote of the people. In section 3 is found this language:

"All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference."

It is clear that such initiative measures must go to the next regular general election held throughout the state, unless the Governor or the Legislature shall order that it be submitted at a special election. The election of October 2, 1923, was a special election.

Not having been submitted at the said special election by direction of the Governor or the Legislature, Initiative Measure No. 79 was not presented for consideration of the people as by the Constitution of the state directed, and it has no force and effect. In the oral argument little, if any, contention was made that it was effective, but we have deemed it better to set out the reasons.

The second question grows out of that part of the call, quoted supra, based on the alleged inherent power of the Legislative branch of the state government to convene upon the order of the members thereof.

The state is a political entity, or sovereign. Its reason for legal existence is the recognized necessity for rules regulatory of the relations of men. The sovereign owes its existence to its people, for they formed it and maintain it in the exercise of that right, which, by common consent, society concedes inheres in the members thereof. In the exercise of such rights, the Constitution of Oklahoma was formed, creating governmental agencies, whose powers and duties are defined therein. Such agencies cannot usurp the rights which inhere in the people and in the people alone, but such agencies have only such rights and powers as the people have surrendered to them by the organic law. We shall not undertake to write a commentary upon what the law ought to be. No court can justify itself in a lengthy dissertation on subjects of governmental policy. We are not unmindful of the rights of the public to comment on or criticise the declaration of the law as the court finds it to be, but truth impels us in passing to say much of it grows out of ignorance of the law and the desire of certain agencies to mislead, intentionally, the reading public,

uninformed as to the provisions of their constitutional government and the limitations which the people themselves have placed upon such agencies, but the court cannot justify itself in failing to declare what the law is, irrespective of the many attempts to distort and mislead.

Our form of government, both national and state, is denominated republican. In this, as in other states, the charter creating the government is denominated its Constitution. In the Union of states. of which Oklahoma is one, each state is required by the Constitution of the nation to be republican in form. That form goes to the division or distribution of powers, to branches of government commonly known as governmental agencies. Such agencies are universally referred to and known as three in number, to wit, legislative, executive, and judicial. In the Oklahoma Constitution this division of governmental agencies is specifically set out in article 4 (Williams' Annotated Constitution, section 50). It reads as follows:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, **and neither shall exercise the powers properly belonging to either of the others."**

The last clause, "and neither shall exercise the powers properly belonging to either of the others," is an inhibition. It is found in the said article and is strong language, and used to prevent one of the said branches of state government from undertaking to do what the organic law of the state directs shall or may be done by another.

### Legislative Department.

Article 5 (Williams' Annotated Constitution) creates the legislative department in this language:

"The legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatives. * * *"

Section 26 of said article 5 provides:

"The members of the Legislature shall meet at the seat of government on the first Tuesday after the first Monday in January at twelve o'clock noon, in the year next succeeding their election, or upon such other day as may be provided by law."

The succeeding section (27), provides:

"The Legislature shall hold regular biennial sessions as herein provided, but this

shall not prevent the calling of a special session of the Legislature by the Governor."

Section 29 of said article 5 provides:

"The House of Representatives shall, at the beginning of each regular session and at such other times as may be necessary, elect one of its members Speaker."

Section 28 of said article 5 provides:

"The Senate shall, at the beginning of each regular session and at such other times as may be necessary, elect one of its members President pro tempore, who shall preside over its deliberations in the absence or place of the Lieutenant Governor. * * *"

Section 42 of said article 5 provides:

"In any legislative investigation either house of the Legislature, or any committee thereof, duly authorized by the house creating the same, shall have power to punish as for contempt, disobedience of process, or contumacious or disorderly conduct, and this provision shall also apply to joint sessions of the Legislature, and also to joint committees thereof when authorized by joint resolution of both houses."

From these provisions it must be clear, unless the purpose is to confuse, that this legislative branch or agency of the state government is composed of two integral parts, to wit, the House of Representatives and the Senate, and that the two combined are **the Legislature,** but are such **only when convened and organized** as by the said organic law of the state provided. In the said sections quoted, nor from any other section dealing with the legislative branch of the state government, is to be found any provision giving the members elected to the Legislature, as individuals, any power. When the members so elected are convened in biennial session, as provided by the said quoted section 27, and organized, they constitute and function as the Legislature, the said agency acting through its members as sworn officers, composing the respective branches of this department of state government. It is well recognized by all who know anything as to the basic or constitutional law of the state that the Legislature has both legislative and inquisitorial powers. There is nothing to be found in the Constitution, and no reason in logic why one of said powers should be exercised by the members when not constituted and organized as a Legislature. If the Legislature can function at all, it does so possessed of all the powers granted that branch of the state government. There is not to be found in the said article 5 any section or language which indicates that that body can do anything except as a **Legislature,** in session, and duly organized as

such, except the specific provision that when impeachment charges have been preferred by the House of Representatives as one branch of the Legislature, they may be tried by the Senate as a court of impeachment, after the Legislature has adjourned. There is nothing to be found in article 8, dealing with impeachment and removal from office, which discloses expressly, or by implication, that the House of Representatives (this being the language of section 1, article 5: "The legislative authority of the state shall be vested in a Legislature consisting of a Senate and a House of Representatives") can perform any function except when duly in session and duly organized as a **House of Representatives,** nor to indicate that such organization can be perfected except when the Senate convenes and is organized as provided in the Constitution.

In the last sentence in section 3, article 8, dealing with impeachment and removal from office, we find this language:

"The House of Representatives shall present all impeachments."

This provision can mean nothing more (and it fully states that) than the House of Representatives is an integral part of the Legislature, and as such must present such charges.

The succeeding section provides:

"When the Senate is sitting as a court of impeachment, the Senators shall be on oath, or affirmation, impartially to try the party impeached, and no person shall be convicted without the concurrence of two-thirds of the Senators present."

Language could not be clearer. The House of Representatives, as one of the co-ordinate branches of the legislative department of the state government, when the Legislature is convened and organized as provided by law, can exercise inquisitorial powers, and at no other time, and the charges, if any are preferred, must be preferred by such House of Representatives.

At the election held the first Tuesday in November, 1926, the members of the Eleventh Legislature of the state of Oklahoma were elected. The said Legislature convened, as provided by said section 27 of article 5, in its regular biennial session. It continued in session, possessing both legislative and inquisitorial powers, until March 24, 1927, when it adjourned sine die. It now appears that certain members of the House of Representatives seek to reconvene the Eleventh Legislature in extraordinary session.

Able counsel were asked to point out in

the oral argument the constitutional provision which granted the authority here sought to be exercised. Honorable S. P. Freeling, formerly Attorney General of the state, as counsel for the defendants, made the statement, in substance, that in 1923 he and other able lawyers of the state met in conference to devise the above-mentioned Initiative Bill No. 79. It must have appeared clear to counsel then that the authority now, claimed by the defendants was not to be found in the Constitution.

### Executive Department.

We advert to the last clause in article 4, quoted supra: "And neither shall exercise the powers properly belonging to either of the others." We do this to point out that in article 6 the executive department, or second agency of the state government, is, by the Constitution, created. Section 2 thereof provides:

"The supreme executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma'."

Section 7 thereof provides:

"Extraordinary or special sessions. The Governor shall have power to convoke the Legislature or the Senate only, on extraordinary occasions. At extraordinary sessions no subject shall be acted upon, except such as the Governor may recommend for consideration."

The Constitution made plain, by the said section, that the Governor possessed the power to convoke the Legislature in extraordinary session. This being true, the said inhibition in the last sentence of the said article 4 expressly prohibits the legislative branch, or any part thereof, from exercising this power. We reach this conclusion not by an independent interpretation of our constitutional provisions, although they are so clear that there is no room for confusion, unless confusion be the object and aim. The provisions of the California Constitution are as ours, article 3 thereof corresponding with article 4 quoted supra.

In the case of French et al. v. Senate of State of California, 146 Cal. 604, 80 Pac. 1031, in the syllabus, the Supreme Court of that state said:

"Under Const., art. 3, prohibiting any person charged with the exercise of powers properly belonging to one of the departments of government to exercise any functions pertaining to either of the others, except as expressly authorized by the Constitution, a session of the Legislature which has adjourned sine die cannot be reconvened upon mandate of the judiciary, nor be in any way again called together, except in special session and at the behest or the Governor, as provided by Const., art. 4, sec. 2, and article 5, sec. 9, authorizing the Governor to specially convene the Legislature on extraordinary occasions."

In the impeachment trial of William Sulzer, Governor of New York, the Court of Appeals (which is the court of last resort in that state, and required by its Constitution to sit with the Senate in such a trial), in effect approved a contention of the respondent therein on the question here involved. During the progress of said trial, it was urged in part (vol. 1, p. 79):

"Assuming, for the purpose of argument, that the function of the Assembly (the same as our House of Representatives—ours) in preferring articles of impeachment is judicial in its nature, although we shall later argue to the contrary, we urge that the conclusion of the Attorney General is unsound and his reasoning fallacious.

"We have shown that every reference in the Constitution to 'the Assembly' is a definite and specific reference to it as one of the 'houses' of the Legislature. The Constitution does not recognize any entity under the name of 'the Assembly,' except that body which exists as a constituent branch of the Legislature. There is but one Assembly. It is 'the Assembly.' It is not one organism in respect to article 3 (the legislative provision—ours), and another when referred to in article 6 (the impeachment provision—ours) of the Constitution.

"The mere fact that article 6 conferred upon the Assembly the power of impeachment * * * does not operate as a metamorphosis of the nature of that body. It is still 'the Assembly' and nothing more. It remains a constituent branch of the Legislature. It is not transformed into anything other or different than an integral part of the Legislature; a branch of it; one of its houses; endowed, if you please with the quasi judicial power of impeachment, but still acting merely within the orbit which the Constitution has assigned to it, as a part of the Legislature, and governed by the limitations imposed upon the Legislature. * * *

"Nowhere in the state Constitution is the body which we know as 'the Assembly' referred to by any other characterization than as 'the Assembly.' * * * Nowhere in article 6 of the Constitution (the impeachment provisions—ours), which confers such alleged judicial power, nor in any other article of the Constitution, is there to be found a word or a syllable permitting the inference that when the Assembly acts as an accusing body, it is absolved from obedience to the beneficent limitations and restraints of the Constitution, which specifically and in clear and

unambiguous language refer to and affect 'the Assembly.' * * *

"There is no way known to the Constitution or to the law, by which the Assembly can be convened, except automatically on the first Wednesday in January, at the regular session, or by the proclamation of the Governor to meet in extraordinary session. But the regular session may have adjourned sine die, and the Governor may have refused to call an extraordinary session. * * * How can the Assembly be convened under such circumstances? At whose instance? Certainly not at that of the private individual. * * * **Certainly not by any member of the Assembly who should desire to assume authority to convene that body and to usurp the functions vested exclusively in the Executive.** It is inconceivable that the 150 members of the Assembly should spontaneously assemble, at one and the same place and at one and the same time. Who is to summon the assemblymen? Upon whose mandate are they to be called together? What is the penalty for the refusal of any of them to meet his fellows? * * * Where is the source of power which enables him, for such a purpose, and under such circumstances, to hale to a place of meeting and put under arrest the recalcitrant assemblyman?"

—when Judge Cullen said (page 219, vol. 1) :

"It is urged by the learned counsel for the managers that the assembly has the inherent right to meet at any time and present articles of impeachment. From that doctrine I dissent in toto. It is the assembly that has the right * * * to impeach, but the assembly does not consist of the individual members of its body, except when they are duly assembled. * * * If we assume that any member of the Assembly or the Speaker may convene that body for the purpose of impeachment, the body so meeting would have no power to protect itself. It would be a scene of disorder, and before there had been any election of a Speaker, one member might convene it at one spot and one at another. It would lead to anarchy, and the extreme case that has been suggested that a Governor might commit treason, while theoretically possible to imagine, is quite improbable, and I think little weight should be given to it. Extreme cases do not control the constructions of statutes or Constitutions. * * *"

During the lengthy oral argument, in the instant case, several times able counsel were asked if, during the history of the government of the American states, any Legislature was ever convened in extraordinary session for inquisitorial purposes or otherwise except upon order of the Chief Executive. No case was cited by counsel where inquisitorial authority was exercised by the Legislature in extraordinary session, except when it had been convened by the proclamation of the Governor. In the Sulzer Case, from New York, the Legislature was in session by call of the Governor. It was true in the Ferguson Case, from Texas; it was true in the Walton Case, from Oklahoma; and no case is cited; and none are to be found, where such was attempted otherwise. By analogy, the Constitution of the national government and the power and authority of the national Congress bear a close relation to the state governments. During its entire history, the national Congress never attempted to assemble in extraordinary session except upon proclamation of the President. In the states, starting with the original thirteen and increasing to 48, no case is cited where any Legislature, after adjourning its regular session sine die, has ever, on the ipse dixit command of certain of its members, undertaken to convene in extraordinary session, except in Oklahoma, and as is witnessed in the document quoted hereinabove.

The above declaration of the law of the state of Oklahoma on the subject here in question might have been evaded at this time, but this court is not unaware that it would be called upon to determine these exact questions, and we have acted upon the principle that it is our duty rather to embrace than to repel the settlement of uncertainties. This is not novel in the jurisprudence of the states, for, on a similar occasion, in the case of State ex rel. Postel v. Marcus, 152 N. W. 419, the Supreme Court of Wisconsin, in part, said:

"While dealing with the subject suggested might be avoided at this particular time it does not seem best to do so; but rather to face the situation and solve it. Much harm may come by uncertainty as to an important constitutional question being permitted to exist until affairs, public and private, shall have been adjusted to a condition apparently legitimately created by a legislative effort. * * * The policy and duty here is rather to embrace than to repel opportunity to remove such uncertainties.

"No feature of the judicial function is of equal dignity with that which requires dealing with what is and what is not, really, a part of the Constitution. * * * None requires an equal degree of care to reach a right conclusion and courage to pronounce it. The court may, and should, and must, on such great occasions, look to effects and consequences. Not to do so with the thought of hesitation, much less omission to do what duty to here and to the public requires; but as an inspiration to reach the highest at-

tainable degree of certainty of the right being vindicated in the end."

The law of Oklahoma is as we have stated it. It does not follow, however, that this court will direct an injunction be issued against private citizens from coming to Oklahoma City. If the members of the Legislature come to the Capitol, they come as individuals. They can incur no obligation; they can perform no official functions, until the Chief Executive of the state exercises the discretion vested in him by the said section 7 of article 6 and calls the said body into extraordinary session. Otherwise, the Legislature of Oklahoma convenes in regular biennial session the first Tuesday after the first Monday in January, 1929, and for no purposes can function until then.

MASON V. C. J., and PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 36 Cyc. p. 942 (Anno). (2) 12 C. J. p. 805, §237; 29 Cyc. p. 1414; 36 Cyc. p. 851. (3) 12 C. J. pp. 802, 803, §234; p. 835, §318; 36 Cyc. pp. 844, 850, 855, 944. (4) 12 C. J. p. 748, §167; p. 805, §237; 36 Cyc. pp. 849, 850, 944.

HARRISON, J. (dissenting). While for reasons I shall herein set forth, I fully concur in the conclusion reached in the majority opinion, that this court cannot enjoin the members of the Legislature from meeting as a branch of the Legislature. I must dissent from that portion of the opinion which assumes to declare that they cannot meet except upon call of the Chief Executive, for reasons which I shall also give.

As I view and construe this record, considering the facts alleged in connection with the prayer of plaintiff in error, the relief sought is, or, at least, the ultimate effect of the relief sought would be, to enjoin the members of the House of Representatives from assembling or attempting to assemble themselves in the capacity of a branch of the Legislature upon their own call, their own initiative, the Governor having refused to call the Legislature into extraordinary session, for the purpose of inquiring into the affairs and conduct of various state officers, and to present articles of impeachment, if the facts justify such action. And as I construe the Constitution and statutes, injunctive relief in any form cannot be granted to plaintiff in error, giving its allegations and prayer the most liberal construction for the simple reason that the court is prohibited by the Constitution from granting such relief. Article 4, which embraces but one section, provides:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

To enjoin the Legislature or either house thereof from assembling for the purpose of doing what it deems to be its duty, would in my opinion constitute a flagrant violation of the foregoing constitutional provision. This provision means that each of the three great master wheels in the machinery of our scheme of government must revolve within its own prescribed orbit. Neither must rub against the other, lest there be intolerable friction. It is a wise and potent writ of prohibition directed by the people to the departments of government.

The judiciary, more than any other department of government, should be ever watchful and careful to not go beyond the constitutional limitations upon its powers. It being the only department of government endowed with authority to construe the law and pass finally upon the validity of acts of the other departments, it should, at all times, under all circumstances, sternly refuse to go beyond its intended powers.

Hence, in view of the foregoing provision and for the above reasons, we have no authority to grant the relief sought. The mere contention that the members of the House of Representatives might assemble themselves, without constitutional authority, and might attempt an illegal expenditure of public funds, does not authorize the judiciary to exceed its powers and interfere by injunction. Even the probability of such actions does not extend judicial authority. The Constitution presumes and the law presumes, and necessarily so that the Legislature will not exceed its authority, that it will not do illegal things; but, if it should do such things, if it should forget its oath and transcend its constitutional limitations, then the judiciary has express authority to declare such acts invalid and thereby protect the public from the effects thereof.

I do not deem it necessary to discuss this phase of the question further. I do not believe the correctness of this position can be successfully refuted, and therefore heartily concur in that portion of the majority opinion denying injunctive relief.

But I cannot agree that, under the issues presented by the pleadings and under the allegation of facts in the petition for injunction, this court clearly has jurisdiction to declare whether or not the Legislature has power to meet on its own motion.

Nor will I concede that the position I am forced to take is solely a technical one.

The law books abound with decisions wherein the judgments of trial courts have been reversed in the most important of matters simply because the judgment was without the pleadings. The Legislature has prescribed the procedure and the rules by which litigants may obtain their rights in the courts. These rules constitute the measure by which civil rights are to be determined, and civil rights cannot accurately and properly be determined except by the rules prescribed by law, one of the most fundamental of which is that a judgment must be within the terms of the pleadings. The facts alleged in this case are not sufficient, in my opinion, to warrant the court in declaring whether or not the Legislature could meet on its own motion. Being of this opinion, I am of the further opinion that the express holding in the majority opinion that the Legislature cannot convene except by call of the Governor is pure dictum. While dictum is frequently enlightening, yet it is never controlling, and is rarely persuasive, and should not be indulged in except where it is necessary in the course of reasoning to a conclusion. Therefore I do not believe that the court should, under the condition of the pleadings herein, have judicially declared whether or not the Legislature has authority to convene on its own motion.

It is contended that there is a great public demand for the court to pass upon this question in this case. My answer to this is that the public has no right to demand that the courts disregard the rules prescribed by law.

And in the majority opinion a decision from the state of Wisconsin is quoted from and commented upon wherein the Supreme Court of that state confessedly yielded to the public demand and judicially passed upon a question that was not properly before it, but this is no reason why we should lay aside the measure prescribed by law for determining civil rights.

However, inasmuch as both parties appear to be willing for the court to declare the law, at least neither party appears to resist the court, doing so, and both parties appear to desire enlightenment upon the question, we do not consider it amiss to call attention of the members of the Legislature, and especially the defendants in error here, to the following provisions in section 3, art. 8, of the Constitution, to wit:

"The House of Representatives shall present all impeachments."

This does not say sitting as a board or court of inquiry for the purpose of impeachment, but simply says, "the House of Representatives shall present all impeachments."

And also call attention to section 4, Id., which provides that:

"When the Senate is sitting as a court of impeachment the senators shall be on oath or affirmation, impartially to try the party impeached."

And call attention to the further fact, for whatever it may be worth, that the House of Representatives is not required to take any additional oath, nor required to reorganize into a different body than that of the House of Representatives, and the clear inference that it may make its investigation and present articles of impeachment in its legislative capacity as such and in the regular course of its legislative duties, not as a court of inquiry, but as a House of Representatives.

Section 6, Id., provides that the Legislature shall pass such laws as are necessary for carrying into effect the provisions of the Constitution on impeachment, and by legislative act, effective March 12, 1915, art. 2, chap. 2, S. L. 1921, the Legislature made provision for carrying into effect the constitutional provision for impeachment.

Section 149, C. O. S. 1921, merely recopies section 3, art. 8, of the Constitution as a statutory provision, and contains the following:

"The House of Representatives shall present all impeachments."

Section 153, Id., contains the following:

"The articles of impeachment are the written accusation * * * drawn up and approved by the House of Representatives."

Section 156, Id., provides that when articles of impeachment are presented to the Senate, the Senate shall within 15 days organize as a court of impeachment, and makes further provision whereby the court of impeachment may discharge its duties. And section 161, Id., prescribes the oath which the Senate shall take before it becomes a court of impeachment. Section 1 art. 7, of the Constitution provides the judicial pow-

er of this state shall be vested in the Senate, sitting as a court of impeachment, the Supreme Court, district courts, and other courts and boards, but nowhere, either in the Constitution or statute, is it expressly provided or remotely intimated that the House of Representatives constitutes any part of the court of impeachment. Neither is it anywhere expressly provided or remotely intimated, either by Constitution or statute, that the House of Representatives is required to act otherwise than as a House of Representatives in presenting articles of impeachment, or that it is required to take any additional oath other than that as a member of the House of Representatives, or is by express provision or any remote intimation inhibited from conducting an investigation and presenting articles of impeachment in the regular course of its legislative duties. In fact, there is no provision in either the Constitution or statutes which even impliedly gives the members of the House of Representatives authority to present articles of impeachment except in their constitutional capacity as members of the Legislature.

We call attention to these provisions for whatever benefit it may be to the members of the House of Representatives, and further call attention to the case of Farrelly v. Cole (Kan.) 56 Pac. 492, which is an able and very exhaustive opinion on the authority of the Legislature to convene in extra ordinary session on its own motion.

### On Rehearing.

PER CURIAM. This case, fraught as it has been since the issuance of the opinion of this court, if not before, with public clamor, was submitted to this court on oral argument and without briefs on the part of defendants in error. Seemingly defendants in error in their original petition before this court, and unquestionably in their attorney's petition for rehearing (they not appearing, nor approving his appearance), seek to avoid the force of the opinion of this court in the decision of this matter. In the argument before this court they largely relied upon the so-called inherent right of the Legislature to assemble for impeachment purposes, and urged us to determine they had such inherent right.

Mr. Justice Harrison, while expressing himself then that the matter was not before the court (for the Legislature had not met nor attempted to expend money from the public treasury), cited in his views the case of Farrelly v. Cole (Kan.) 56 Pac. 492, wherein that Supreme Court said:

"The sole power is thus deposited in the Governor to convene the Legislature on extraordinary occasions." See, also, syllabus 2, therein.

Also observe the citations, Whitman v. R. R. Co., 2 Har. (Del.) 514:

"This is a power the exercise of which the framers of the Constitution have seen fit to intrust to the chief executive officer of the state alone."

So it is in Colorado, 9 Colo. 642, 21 Pac. 477. There the court held the power under their Constitution "rested entirely in the judgment of the executive." Again in 35 Pac. 531, the Colorado court held relative to the Governor:

"He alone is to determine when there is an extraordinary occasion for convening the Legislature."

In New York, People v. Rice, 65 How. 245, 20 N. Y. S. 296, that court, treating with their section 4, article 4 of the Constitution, said:

"This article gave the Governor power to convene the Legislature in extraordinary session, and from the very nature of the provision, he must be the judge as to what constitutes the extraordinary occasion."

So it was in Rhode Island. In re Legislature Adjournment, 18 R. I. 830, 27 Atl. 327.

And so in Wisconsin. State v. Farwell, 3 Pin. 439.

The analogy is the same with the federal government.

No case has been called to our attention and we have been unable to find any where in the history of our government any Legislature had inherent authority to convene itself.

It is urged that they have the right to convene themselves. It might just as reasonably be said that men possessing the qualifications of grand jurors could assemble, organize a grand jury and return indictments, without being called together as provided by law.

Certainly the Constitution could be amended so as to provide for the power and duty of the Legislature to convene itself. Has this been done?

Defendants in error urge that Initiative Petition No. 79 was a constitutional amendment, known as article 8a, Bobbs-Merrill Supp. p. 19, wherein same is published as an amendment to the Constitution.

It cannot be a constitutional amendment, for by the very text of the document, under

paragraph (F), it says: "The purpose of this Act is to complete the vitalization of article 8, of the Constitution, and render the same effective." Note the word "Act"— note the provision for vitalization. Then can it be said that this is but a statute, if anything? Not so. It was not submitted as a constitutional amendment, and certainly cannot be considered as such. If it be a statute, it is in violation of the Constitution of this state, for the Constitution, by article 5, section 27, provided:

"The Legislature shall hold regular biennial sessions as herein provided, but this shall not prevent the calling of a special session of the Legislature **by the Governor.**"

Article 6, section 7, provides:

"The Governor shall have power to convoke the Legislature, or the Senate only, on extraordinary occasions."

So the Constitution having invested the power in the Governor alone to convene the Legislature on extraordinary occasions, the Governor can only be divested of that power by a constitutional amendment.

It is elementary that when the constitutional mandate says one thing and a statute says a directly opposite or contrary thing, the Constitution must be adhered to and the statute must fall.

All the foregoing has been said upon the theory, solely for the sake of presentation, that the so-called "79 Act" was properly submitted to the sovereign citizens of the state of Oklahoma. "79" purported to be an initiative measure. Article 5, section 3, of the Constitution says in part:

"All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference."

It is the record that neither the Legislature nor the then Governor referred 79 to the people at the election of October 2, 1923. The called special election of that date was for the express purpose of other matters, to wit: State Question No. 121, relative to Workmen's Compensation Act; State Question No. 122, a proposed constitutional amendment relative to women's right to hold state offices; State Question No. 123, a proposed constitutional amendment known as the Soldiers' Bonus; State Question No. 124, a constitutional amendment known as the $15 per capita school aid, carried, but declared noneffective by the Supreme Court, September 9, 1924; State Question No. 125, a con-stitutional amendment relating to the depositors' guaranty fund.

As heretofore stated, Petition No. 79, was not submitted by the Governor nor by the Legislature, the same being State Question No. 119, Initiative Petition No. 79, which we now have before us.

Article 5, section 3, provides in part:

"The Legislature shall make suitable provision for carrying into effect the provisions of this article."

This language shows that the same is not self-executing.

See Atwater v. Hassett, 27 Okla. 292, 111 Pac. 802, wherein the opinion shows that the Governor submitted the amendment. It was held by syllabus 3 that the Constitution having expressly provided that the Legislature shall enact laws "for carrying into effect provisions relating to the initiative and referendum," courts will not revise such discretionary powers. The opinion says:

"It has been time and again held by this court that the initiative and referendum provisions as contained in the Constitution of this state were not self-executing. Ex parte Wagner, 21 Okla. 33, 95 Pac. 435; Norris et al. v. Cross, 25 Okla. 287, 105 Pac. 1000; Threadgill v. Cross, 26 Okla. 403, 109 Pac. 558; In re Initiative State Question No. 10, 26 Okla. 554, 110 Pac. 647."

And so subsequently the Legislature did provide by section 6653, Compiled Oklahoma Statutes, 1921, Session Laws 1916, the act approved by Honorable R. L. Williams, then Governor, author of Atwater v. Hassett:

"Whenever any measure shall be initiated by the people in the manner provided by law, or whenever the referendum shall be demanded against any measure passed by the Legislature, same shall be submitted to the people for their approval or rejection at the **next regular** election: Provided, the Governor shall have power, in his discretion, to call a special election to vote upon such questions, or to designate the mandatory primary election as a special election for such purpose."

The proviso is not here applicable, for the October 2, 1923, special election was not a mandatory primary election, nor was that election called by the Governor to vote upon Initiative Petition No. 79. Consequently 79 was not properly submitted to the people as a statute.

This act, by providing that the Governor may designate the mandatory primary election as a special election for such purpose, or call a special election, conclusively shows that the Legislature did not consider

a primary election or special election held throughout the state as a regular election, and it was therefore necessary, before these measures could be voted on at such election that same be submitted thereat by the Governor.

It is insisted by the respondents that, as the Constitution provides (section 3, article 5):

"All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the the express purpose of making such reference."

It is further provided in said section:

"Petitions and orders for the initiative and the referendum shall be filed with the Secretary of State and addressed to the Governor of the state who shall submit the same to the people."

It appears that Hon. J. C. Walton, on August 13, 1923, submitted to the people of the state, by proclamation of that date, certain measures to be voted upon, at a special election, on October 2, 1923. After this proclamation had been issued signatures to Initiative Petition No. 79 were filed with the Secretary of State. The Governor did not submit the question as contained in No. 79 at the said special election to be held on the other matters contained and set forth in his proclamation theretofore issued.

The right of the Governor to call or refuse to call an election, or submit or refuse to submit both initiative and referendum measures, has been many times construed by the executive department of this state. Such interpretation has been long conceded to be the law as to the time and manner and when the initiative and referendum petitions go, under the Constitution and statutes of this state, to the people. For example:

Initiative Petition No. 92 was filed April 8, 1925, and was submitted by the Hon. M. E. Trapp, Governor, to the voters of this state at the primary election held August 3, 1926.

Referendum Petition No. 47 was filed April 17, 1925, but was not voted on at the primary election held throughout the state, August, 1926, but its submission was ordered by the Governor at the general election, November 2, 1926.

Referendum Petition No. 49 was filed April 7, 1925, and was not submitted by the Hon. M. E. Trapp at the primary election held on August 3, 1926, but was submitted by the Governor to the electors to be voted on November 2, 1926.

Initiative Petition No. 89 was filed May 28, 1925, and the same was not submitted at an election held throughout the state which occurred on August 3, 1926, but was submitted at an election held November 2, 1926.

Initiative Petition No. 90 was filed with the Secretary of State on May 28, 1926, and the same was not submitted at an election held throughout the state which occurred on August 3, 1926, but was submitted at the election held November 2, 1926.

Initiative Petition No. 50 was filed on April 24, 1924, and the same was not submitted by the Hon. M. E. Trapp at the primary election held throughout the state on August 3, 1926, but was submitted at the election November 2, 1926.

Referendum Petition No. 51 was filed on April 8, 1925, in the office of the Secretary of State and election was not held thereon at the primary election held throughout the state on August 3, 1926, but the same was submitted at an election held on November 2, 1926.

Referendum Petition No. 52 was filed April 9, 1925, and the same was not submitted at the election held throughout the state on August 3, 1926, but the same was submitted on November 2, 1926.

This clearly shows that the executive construction of the provisions of the Constitution and laws of the state has, in this manner, been exercised so as to empower the Governor to call an election on the measures initiated as set out in the Constitution as vitalized by the acts of the Legislature.

Initiated Question No. 79 was never submitted by the Governor of Oklahoma to the electors of the state at an election held on October 2, 1923.

The Hon. J. C. Walton on October 3, 1923, called a special election on No. 79 to be held December 6, 1923. This election was never held.

Having reached this conclusion, it follows that the petition for rehearing should be denied, and it is so ordered.