Dear Senate Williamson,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 In light of the Oklahoma Constitution's Separation of Powers provision at Article IV, Section 1, can the Governor compact with Indian tribes or other governmental entities and in doing so bind the State, without the approval of each compact by the Legislature?
 I. Introduction
¶ 1 The question you pose requires an analysis of the powers of the Governor, as a member of the Executive Branch of Government, the powers of the Legislature, and the Oklahoma Constitution's Separation of Powers provision, Article IV, Section 1. We begin with an overview of the Governor's powers.
 II. Governor's Power To Enter Into Agreements With Other States, Indian Tribes And The Federal Government
¶ 2 The Office of Governor is not known at common law; "It is the title universally applied to the head of the executive department of a state, but in every instance the office is created by the State Constitution." Royster v. Brock,79 S.W.2d 707, 709 (Ky. 1935). Oklahoma is no exception to this observation. Under Article VI, Section 1 of the Oklahoma Constitution, the Executive power of the State is vested in various officers, including a Governor:
 A. The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution. . . .
Id. (emphasis added).
¶ 3 Further, at Article VI, Section 2, the Oklahoma Constitution provides that the Governor is vested with the Supreme Executive power of the State:
 The Supreme Executive power shall be vested in a Chief Magistrate,[1] who shall be styled "The Governor of the State of Oklahoma."
Id. (footnote added) (emphasis added).
¶ 4 In holding that the Governor of Oklahoma lacked the power to remove a State Highway Commissioner in Wentz v. Thomas,15 P.2d 65 (Okla. 1932), the Oklahoma Supreme Court held that a fundamental distinction exists between the executive powers conferred upon the President by the United States Constitution and the executive powers of the Governor under the Oklahoma Constitution. The court stated:
 Again, there is a fundamental difference between the executive powers of the President of the United States under the Federal Constitution, and the executive powers of the Governor of this state under our state Constitution. There is no division of the federal executive department; the President has power and control over all of the executive branches of government-each acts as his agent and performs [at] his discretion. . . . This is not the case under our state government. The executive authority, under our government, is vested in a Governor, and eleven other heads of departments,
and, in addition thereto, the Constitution contains a residuum clause which authorizes the Legislature to create other officers and place them in the executive department, and make them an independent branch of the executive department, or make them directly responsible to the Governor or to some of the other branches of the executive department.
Id. at 69 (emphasis added).
¶ 5 Relying on this distinction, the court concluded that under the legislation establishing the Highway Commission, its Commissioners were removable by the courts — not the Governor — and the Constitution's vesting of the "Supreme Executive power" in the Governor did not empower the Governor to remove a Highway Commissioner. Id. 69-70.
¶ 6 We thus see that under the structure of the Oklahoma Constitution, the "Supreme Executive power" of the Governor does not include the power to perform or control all Executive Branch functions. Rather, in conformity with the residuum clause of Article VI, Section 1, the Legislature can vest the Executive Power of the State in Executive Branch officers other than the Governor, unless the particular power involved has been specifically vested in the Governor by the Constitution.
¶ 7 One of the specific powers which the Constitution vests in the Governor is the power to enter into agreements with other governments. Specifically, Article VI, Section 8 of the Constitution empowers the Governor to deal with both the Federal Government and other states:
 The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State.
Id. (emphasis added).
¶ 8 Under Article VI, Section 8, as a matter of State Constitutional law, it is the Governor who is empowered to conduct intercourse and business with the other states and with the United States.
¶ 9 On the other hand, the power of the Governor to contract with Indian tribes is not derived from the Constitution; it is derived from statutes — specifically 74 O.S. 2001, § 1221[74-1221]. That Section provides in pertinent part:
 C. 1. The Governor, or named designee, is authorized to negotiate and enter into cooperative agreements on behalf of this state with federally recognized Indian Tribal Governments within this state to address issues of mutual interest. Except as otherwise provided by this subsection, such agreements shall become effective upon approval by the Joint Committee on State-Tribal Relations.
Id. (emphasis added).
¶ 10 Under the above-quoted constitutional and statutory provisions, the Governor is constitutionally vested with the power to enter into agreements with other states and the United States Government, and is statutorily vested with the power to enter into agreements with federally recognized Indian Tribes.
¶ 11 The gravamen of your question is whether in entering into agreements with these entities, the Governor can bind the State in the absence of approval of each negotiated agreement by the Legislature. As you recognize in your question, the answer depends on the proper scope of the Executive and Legislative Branches of governments under the Separation of Powers provision of the Oklahoma Constitution.
 III. Legislative Approval Of The Individual Agreements Negotiated By The Governor Between the State and Other Sovereigns Violates The State's Separation Of Powers Provisions A. Oklahoma's Separation Of Powers Provisions
¶ 12 Oklahoma's Separation of Powers Clause is set forth at Article IV, Section 1 of the State Constitution, as follows:
 The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.
Id. (emphasis added).
¶ 13 This is not the sole provision in the Constitution dealing with Separation of Powers among the three branches of government. Rather, the separate, independent nature of the branches of government is interwoven throughout the Constitution. The Constitution at Articles V, VI, and VII, provides for the three separate branches of government, vesting the powers of each branch in the officers of that branch.
¶ 14 Additionally, the officers of one branch are prohibited from holding office in another branch. Members of the Legislature, at Article V, Section 18, are prohibited from holding other offices within State government:
 No person shall serve as a member of the Legislature who is, at the time of such service, an officer of the United States or State government, or is receiving compensation as such; nor shall any person be eligible to election to the Legislature, who has been adjudged guilty of a felony.
Id. (emphasis added).
¶ 15 Likewise, judges, at Article VII, Section 11(b), are prohibited from holding other state offices or positions of trust or profit.
 No Justices or Judges, except those of Municipal Courts, shall engage in the practice of law nor hold any other office or position of profit under the United States or this State or any municipal corporation or political subdivision of this State,
nor shall hold office in any political party. Provided that the Judges of the Court on the Judiciary, the Court of Tax Review and the Court of Bank Review and the Judges of any other such Special Courts may serve in such capacities in addition to their other judicial office. Compensation for service in the National Guard or the armed forces of the United States for such periods of time as may be determined by rules of the Supreme Court shall not be deemed "profit".
Id. (emphasis added).
 B. The Court's View Of Oklahoma's Separation Of Powers Provisions
¶ 16 Shortly after statehood, in In re County Commissioners,98 P. 557 (Okla. 1908), the Oklahoma Supreme Court considered, among other things, the validity of the 1907-08 Oklahoma Session Law which provided that upon the recommendation of the Supreme Court "the Governor shall appoint an additional judge for such district for the time recommended by the court." Id. at 557 (syllabus) (emphasis added). In finding the provision violated the Separation of Powers doctrine, the court noted that in determining if the doctrine is violated, the power beingexercised is a key consideration:
 In this case the provision is that the judiciary shall fix the term of office, which is a legislative act, and in no event in the nature of a judicial act. The power to be exercised is neither judicial, nor in aid of any judicial function.
Id. at 561-62. (emphasis added).
¶ 17 In reaching this conclusion the court embraced the teachings of political philosopher Baron de La Brede et de Montesquieu on Separation of Powers:[2]
 The founders evidently had in mind Montesquieu's Dissertation on the Spirit of the Laws, wherein he said:
 "There is no liberty if the power of judging be not separated from the legislative and executive powers, when the legislative, and executive powers are united in one body or person. There can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws to execute them in a tyrannical manner."
Id. at 561 (emphasis added).
¶ 18 The court also noted that "[t]he distribution of the powers of government into three separate departments . . . isthe basic principle of our constitutional system." Id.
(emphasis added).
¶ 19 In re County Commissioners was decided in 1908, less than one year after statehood. The case shows that from the earliest days of statehood our courts recognized that the State's Separation of Powers provisions were based on the teachings of Montesquieu, and constituted "the basic principle of our constitutional system." Id.
¶ 20 The prohibition of Article IV, Section 1's Separation of Powers Clause that "neither [branch] shall exercise the powers properly belonging to either of the others," formed the basis for the Oklahoma Supreme Court's opinion in Simpson v. Hill,263 P. 635 (Okla. 1927). In that case the court held that the Legislature, under the Constitution, did not have the power to call itself into special session, because such power was vested exclusively in the Governor. Id. at 639-41. Thus, the court found that the Legislature's act of calling itself into session was unconstitutional. Id. In reaching this conclusion, the court noted that the prohibition in Oklahoma's Separation of Powers Clause was in "strong language" which imposed an inhibition upon the three branches of government:
 The last clause, "and neither shall exercise the powers properly belonging to either of the others," is an inhibition. It is found in the said article and is strong language, and used to prevent one of the said branches of state government from undertaking to do what the organic law of the state directs shall or may be done by another.
Id. at 638 (emphasis added) (quoting Williams' Annotated Constitution, Okla. Const. art. IV, § 50 (current version at Okla. Const. art. IV, § 1)).
¶ 21 While recognizing that the strict inhibitions of the Oklahoma Separation of Powers Clause are stated in strong constitutional language, the Oklahoma Supreme Court, like the United States Supreme Court, also recognized that there may be a certain blending of the three powers of government, and that the distinction among the three branches cannot be carried out with "mathematical precision," nor is it possible to divide the branches into "watertight compartments." Bailey v. State Bd. ofPub. Affairs, 153 P.2d 235, 239 (Okla. 1944). The court considered the validity of a statute which authorized the State Board of Public Affairs to transfer functions, inmates, funds and personnel from one state penal or eleemosynary institution to another. The statute was challenged as violating the Separation of Powers Clause because it conferred legislative power upon an executive branch board. In upholding the challenged statute, the court quoted with approval from Wayman v. Southard, 23 U.S. (10 Wheat.) 1 (1825):
 "But Congress may certainly delegate to others powers which the Legislature may rightfully exercise itself." The rule is one of necessity. The Legislature ordinarily meets but once every two years, and then only for a short period of time. While it is not in session, the government must be carried on, and it must delegate certain powers and discretion to others in carrying on essential functions of government.
Id. at 239 (citation omitted).
¶ 22 More recently, in In re Oklahoma Department ofTransportation, 64 P.3d 546 (Okla. 2002), the Oklahoma State Supreme Court held that requiring approval of the Legislative Bond Oversight Commission (LBOC) and the Contingency Review Board (CRB), in the note-approval process necessary for funding highway improvement projects, violated the State's Constitutional Separation of Powers provisions. Id. at 555. As it ruled inBailey, the court again recognized there can be a blending of the three branches of government, and that it is not always possible to contain the three branches of government into "watertight compartments." Id. at 550. The court in Departmentof Transportation then applied a separation of powers analysis used by the Kansas Supreme Court in Schneider v. Bennett,547 P.2d 786 (Kan. 1976). Id. In Bennett, the court had before it a separation of powers challenge to a statute that vested various powers in the Kansas State Finance Council — a council composed of the Governor and eight members of the Legislature. Bennett,547 P.2d at 789-90. In concluding that some of the powers vested in that council were unconstitutional, while others were constitutional, the Kansas Supreme Court, rather than focusing on how a function might be conceptually classified, considered the specific facts before it to determine whether the challenged arrangement constituted a "usurpation by one department of the powers of another department." Id. at 792. As the court noted in Department of Transportation, Bennett considered a non-exclusive set of four criteria as follows:
 The Bennett court considered a non-exclusive set of four criteria in deciding separation of powers issues. The first criterium required the court to consider the "essential nature of the power being exercised. Is the power exclusively executive or legislative or is it a blend of the two?" The second criterium asked what degree of control is the legislature trying to exercise. Is the influence coercive or cooperative? The third criterium sought to discover the legislature's objective. "Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature?" The fourth
criterium asked what is the "practical result of the blending of powers as shown by actual experience over a period of time where such evidence is available." The Bennett court acknowledged that other factors may prove relevant in different cases and encouraged consideration of specific facts which may show that a usurpation of power has occurred.
Department of Transportation, 64 P.3d at 550-51 (emphasis added) (quoting Bennett, 547 P.2d at 792-93).
¶ 23 The court in Department of Transportation applied these criteria to the LBOC's role under the Oklahoma Bond Oversight Reform Act, 62 O.S. 2001, §§ 695.1-695.11[62-695.1-695.11]. The court concluded that because most state governmental entities could not issue an obligation unless approved by the LBOC, the role of the LBOC constituted a usurpation of the power of the Executive Branch by the Legislature, and thus violated the Oklahoma Constitution's Separation of Powers provision. Id. at 552.
¶ 24 In applying Bennett, the Department of Transportation
court first concluded that the LBOC's approval of proposed bond issues could not be classified "as purely legislative, because it is beyond the Legislature's fundamental role to make the law."Id. at 551. The court then stated, "[w]hile the power may be tangentially related to the Legislature's control over fiscal matters, its dominant aspect involves carrying out legislative policy and applying it to varying conditions." Id. In short, the court concluded that the LBOC, consisting of individual legislators, was "exercising powers that are primarily executive or administrative." Id.
¶ 25 In examining the second Bennett criterion — the degree of control being exercised by the Legislature — the court held that the "six legislators [on the LBOC] can halt the entire issuance of the grant anticipation notes even if the executive branch desires to move their approval." Id. Accordingly, the LBOC "is a vehicle by which the executive department is being subjected to the coercive influence of the legislative department." Id.
¶ 26 As to the third Bennett criterion — the Legislature's objective — the court noted that the legislative intent "is closely linked to the issue of legislative control, but looks more closely at the Legislature's actual motives." Id. The court concluded that the motive was not to cooperate by, for instance, providing "some special expertise of one or more of its members," as the statute "creating the LBOC, contains no requirement that its appointees possess any expertise, knowledge or skill valuable in evaluating bonds"; in the absence of such requirements, the situation under the statute was "ideal for implementing legislative superiority and control over the approval process itself." Id. at 551-52 (quoting Bennett,547 P.2d at 798).
¶ 27 Similarly, any requirement that individual agreements or compacts negotiated by the Governor on behalf of the State with other sovereigns, such as Indian tribes, be approved by the Legislature would violate the principles of separation of powers. Any requirement that individual negotiated agreements have to be approved by the Legislature prior to becoming effective would result in a situation like that in Department ofTransportation. Such requirements, as in Department ofTransportation, would have the Legislature carrying out
legislative policy and applying it to various conditions.
Secondly, the power to approve individual contracts would result in complete control by the Legislature, and as in Department ofTransportation, result in a vehicle "by which the executive department is being subjected to the coercive influence of the legislative department." Id. at 551.
¶ 28 In reaching this conclusion, we note that the Oklahoma Constitution does not contain a Treaty Advice and Consent Clause like Article II, Section 2 of the United States Constitution, which empowers the President to make Treaties "by and with the Advice and Consent of the Senate." Id.
¶ 29 Finally, a requirement that each agreement negotiated by the Governor must be approved by the entire Legislature would place the Legislature not in a cooperative role, but in complete control over the approval process. Such legislative power under the Oklahoma Supreme Court's rationale in Department ofTransportation would violate the Separation of Powers provision of the Oklahoma Constitution.
¶ 30 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Separation of Powers provisions in the Oklahoma Constitution, including Article IV, Section 1, are not violated when, without legislative approval of the specific agreements:
 a. the Governor, under the powers vested in the Governor under Article VI, Section 8 of the Oklahoma Constitution, to conduct "all intercourse and business of the State with other states and with the United States," negotiates an agreement with other states or with the United States, or
 b. the Governor, under the authority vested in the Governor at 74 O.S. 2001, § 1221(C)(1), enters into a cooperative agreement (sometimes referred to as a compact) on behalf of the State with a federally recognized Indian Tribal Government within this State.[3]
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 NEAL LEADER Senior Assistant Attorney General
[1] "Magistrate" means: "1. The highest-ranking official in a government, such as the king in a monarchy, the president in a republic, or the governor in a state." Black's Law Dictionary 962 (7th ed. 1999).
[2] See Charles-Louis de Secondat, Baron de la Brede et de Montesquieu, The Spirit of Laws (Dublin ed. 1751).
[3] Of course, any agreement negotiated by the Governor must conform to the public policy enacted into law by the Legislature, as the role of the Legislative Branch is to establish public policy, and the role of the Executive Branch is to execute that policy. See, e.g., Tweedy v. Okla. Bar Ass'n, 624 P.2d 1049,1054 (Okla. 1981).