**STATE ex rel. SHORT, Atty. Gen., v. JOHNSON et al.**

No. 14024—Opinion Filed May 22, 1923.

(Syllabus.)

1. **Statutes—Validity—Violation of Constitution.**

In passing upon the validity of a statute every reasonable doubt should be resolved in its favor, but where a statute is clearly violative of a plain constitutional limitation, it will be held void.

2. **Same—Subjects and Titles of Statutes.**

Section 57, art. 5 of the Constitution of Oklahoma, provides in part: "Every act of the Legislature shall have but one subject, which shall be clearly expressed in its title. * * *" Held, this provision is positive and mandatory. Besides it is reasonable and a substantial compliance therewith is not difficult.

3. **Same—Object of Constitutional Provision.**

Inasmuch as the supreme legislative power of the state, including the power to reject legislative acts, is reserved to the people by sections 1, 2, and 3, art. 5 of the Constitution, one primary object of the above provision of section 57, art. 5, is that the title of an act shall bear clear notice, not only to the legislative body, but to the electorate of the state of what an act may contain.

4. **Banks and Banking—State Policy—Validity of Statute.**

A distinct economic policy of the state is declared in section 1, art. 14 of the Constitution, and the Legislature is therein directed to carry out such policy by the enactment of laws for such purpose, viz., the protection of depositors in state banks; hence an act which has the effect of impairing or destroying such state policy, where a provision which has such effect is not expressed in the title, will be more strictly construed than will an act whose provisions tend to sustain a state policy.

5. **Same—Statute Impairing Depositors' Rights in Assets of Failed Banks—Invalidity.**

Chapters 5 and 6, Sess. Laws 1907-8, as amended and revised in chapter 6, Rev. Laws 1910, vitalized and gave effect to the state policy declared in section 57, art. 5, of the Constitution. Section 5, ch. 58, Sess. Laws 1915, has the effect of seriously impairing, if not virtually destroying, the preference right of the depositors against the assets of a failed bank by giving surety companies an equal preference right with the depositors' guaranty fund against such proceeds. Such provision, not being expressed in the title, is void.

Error from District Court, Kiowa County; Thos. A. Edwards, Judge.

Action by the State, on the relation of George F. Short, Attorney General, against C. H. Johnson, Cleve Christian, and E. J. Winningham on their liability as stockholders of failed bank. Judgment for defendants, and plaintiff brings error. Affirmed.

Geo. F. Short, Atty. Gen., William H. Zwick, Asst. Atty. Gen., Wendell Johnson, Attorney for Banking Dept., and Lee G. Gill,

Special Attorney for Banking Dept., for plaintiff in error.

Geo. L. Zink, for defendants in error.

HARRISON, J. This proceeding involves the constitutionality of section 5, ch. 58, Sess. Laws 1915, in that it is alleged to be violative of sections 57, 51, 46, and 32. art. 5, and section 7, art. 2, of the Constitution.

The controversy grew out of the following facts: The Oklahoma State Bank at Sentinel, Okla., having become insolvent, its affairs were taken charge of by the Bank Commissioner. The United States Fidelity & Guaranty Company was surety for said bank for certain deposits of the county funds of Washita county. When the bank became insolvent, the United States Fidelity & Guaranty Company paid the surety bond for said Washita county deposits. Thereupon, under authority of said section 5, ch. 58, Sess. Laws 1915, the Bank Commissioner issued his check for $10,000 to the United States Fidelity & Guaranty Company as payment of its pro rata share of the assets of said bank, estimated on an equal preference right with the depositors' guaranty fund, and then brought suit against the defendants in error here on their liability as stockholders of said insolvent bank.

Said stockholders, defendants in error here, defend against liability to the United States Fidelity & Guaranty Company on the ground that said section 5, ch. 58, supra, is unconstitutional.

The questions presented to the trial court were whether said section 5, ch. 58, Sess. Laws 1915, was violative of any one or all of said sections of the Constitution, viz.: section 57, art. 5, section 51, art. 5, section 46, art. 5, section 32, art. 5, and section 7, art. 2. The trial court found in favor of defendants in error, holding that said section was unconstitutional, and the cause is briefed and has been orally argued here on the sole question whether the statute above mentioned is violative of any of the constitutional provisions, supra. The section of the statute in question, including its title, is as follows:

### Title:

"An Act to amend sections 267 and 272 of chapter 6, art. 1, of the Revised Laws of the state of Oklahoma of 1910, and to amend section 3, ch. 22, Session Laws of 1913, providing penalties for violations of the banking laws of this state, and to define the powers of the State Banking Board, and for other purposes; and declaring an emergency."

"Section 5. On and after the passage and approval of this act, in all cases where a surety company is compelled to pay, or voluntarily pays, a deposit of any state, county, municipal or other public funds for which it is liable in a failed bank, operating under the banking laws of this state, such surety company shall be entitled to participate in a pro rata division of the proceeds of the assets of any such bank with the depositor's guaranty fund; and the Bank Commissioner shall have exclusive control of the administration and collection of the assets of failed banks, in which any part of the depositors' guaranty fund has been used in payment of depositors, until the depositors' guaranty fund is fully reimbursed and the Banking Board shall pay to such surety company its pro rata share of the proceeds of such assets from time to time as collections from such assets are made; and such surety company in writing a depository bond for any such bank specifically agrees to such administration and that the Bank Commissioner's jurisdiction shall be exclusive. All public deposits secured by surety company bonds or by the assets of any bank shall be included in the computations of average daily deposits as a basis for assessments for the depositors' guaranty fund."

In determining whether the above section of the statute is violative of any of the foregoing constitutional provisions, we should do so in the light of the following universal canons of construction, viz.:

"That the presumption is in favor of the constitutionality of a statute." Fletcher v. Peck, 6 Cranch (U. S.) 87, 3 L. Ed. 162; 6 R. C. L. 97, sec. 98; Ex parte Hunnicutt, 7 Okla. Cr. 213, 123 Pac. 179; State v. Coyle et al., 7 Okla. Cr. 50, 122 Pac. 243; Ex parte Ambler, 11 Okla. Cr. 449, 148 Pac. 1061; Dickinson v. Perry, 75 Okla. 25, 181 Pac. 505; Ledegar v. Bockhoven, 77 Okla. 58, 158 Pac. 1097; Leach v. State, 17 Okla. Cr. 322, 188 Pac. 118.

"That every reasonable presumption will be made in favor of the validity of a statute." Louisville v. Cumberland, etc., Co., 225 U. S. 430, 56 L. Ed. 1151; 12 C. J. 794.

"That any and all reasonable doubts and every reasonable doubt as to the constitutionality of a statute will be resolved in favor of its validity." Ex parte Young, 209 U. S. 123, 52 L. Ed. 714; 12 C. J. 795.

"That the presumption in favor of the constitutionality of a statute will be indulged in by the courts until the contrary is clearly shown" 8 Cyc. 801; 12 C. J. 795; Booth v. Ill., 84 U. S. 425. 46 L. Ed. 623; Fairbanks v. U. S., 181 U. S. 283, 45 L. Ed. 862; Henderson Bridge Co. v. Henderson, 173 U. S. 592, 43 L. Ed. 823; 8 Cyc. 803.

"That it is not within the province of the judiciary to question the wisdom or motives of a lawmaking body in the enactment of a statute." Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; Ex parte McCardle

7 Wall. (U. S.) 506, 19 L. Ed. 264; 12 C. J. 799; 6 R. C. L. 101-2; 8 Cyc. 804-5.

"That courts will presume that the Legislature in passing a statute was cognizant of the facts relating thereto and familiar with the existing conditions sought to be remedied." 12 C. J. 799; 6 R. C. L. 101; 8 Cyc. 803-4.

We should bear in mind, also, that under section 36, art. 5, of the Constitution of Oklahoma the authority of the Legislature shall extend to all rightful subjects of legislation.

In the light of the foregoing canons of construction and from an examination of other authorities bearing more directly upon the points involved in each proposition, it is our opinion that neither section 51, art. 5, section 46, art. 5, section 32, art. 5, nor section 7, art. 2 of the Constitution, is contravened by said section 5, ch. 58, Sess Laws 1915; but having reached the conclusion that said section 5, ch. 58, Sess. Laws 1915, or at least a portion thereof, must fall for failure to meet the requirements of section 57, art. 5 of the Constitution, it is unnecessary to discuss the remaining provisions.

Said section 57, art. 5 of the Constitution, or the portion thereof bearing directly upon the question at issue, is as follows:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. * * *"

That the foregoing provision has a definite purpose in our organic law is clearly apparent, and the purpose of such provision is by no means new to our jurisprudence. Most every state has a similar provision in its Constitution, many have the identical provision, and none but what have some provision looking toward the same purpose. Hence, as its necessity is so generally recognized, its purpose should not be lightly treated. The primary purpose of such provisions has long been recognized, defined, and settled.

In Cooley on Constitutional Limitations their purpose is defined as follows:

"The purpose of these provisions was—first, to prevent hodge-podge or log-rolling legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

The foregoing text was quoted and approved by the Supreme Court of Nevada in an opinion rendered August 5, 1889, 22 Pac. 90. Its correctness, in cases where applicable, has never been disputed by any court. The Supreme Court of the United States in the case of Louisiana v. Pillsbury, 26 L. Ed. 1090, in an opinion rendered at the October term, 1881, discussing a similar constitutional provision, said:

"A similar provision is found in several state constitutions. Its object is to prevent the practice, common in all legislative bodies, where no such provision exists, of embracing in the same bill incongruous matters, having no relation to each other, or to the subject specified in the title, by which measures are often adopted without attracting attention, which, if noticed, would have been resisted and defeated. It thus serves to prevent surprise in legislation."

Hence, such a provision has both a definite and wholesome purpose. In fact, from the number of states which have a similar provision and from the vast number of cases wherein such provision has been called upon in determining the validity of a statute, it may now be said to be universally recognized as a necessary limitation upon legislative bodies. It is a provision which has been frequently before this court. Jefferson v. Toomer, 28 Okla. 658, 115 Pac. 793; Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338; Noble State Bank v. Haskell et al., 22 Okla. 48, 97 Pac. 590; In re Menefee, State Treas., et al., 22 Okla. 365, 97 Pac. 1014; In re Co. Com'rs of Counties Comprising 7th Judicial Dist., 22 Okla. 435, 98 Pac. 557; State ex rel. Hooker, Co. Judge, 22 Okla. 712, 98 Pac. 964; Atwater v. Hassett et al., 27 Okla. 292, 111 Pac. 802; Holcomb v. C.,R. I. & P. Ry. Co., 27 Okla. 667, 112 Pac. 1023; Coyle v. Smith, 28 Okla. 121, 113 Pac. 944; Binion, Sheriff, v. O. G. & E. Co., 28 Okla. 356, 114 Pac. 1096; Johnson v. Grady Co., 50 Okla. 188, 150 Pac. 497.

But there is a very potent reason, lying in the background of this provision, which has not heretofore been taken into consideration by this court in passing upon the sufficiency of the title of an act, viz.: In sections 2 and 3, art. 5, of the Constitution, respectively, the initiative and referendum powers are expressly reserved to the people, and section 1, art. 5, contains the following provision:

"But the people reserve to themselves the power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

Hence it is seen that in our Constitution the provision:

"That an act of the Legislature shall contain but one subject which shall be clearly expressed in the title"

—has a fixed and definite purpose extending beyond the legislative body itself to the people, unto whom is reserved the supreme legislative power. Hence there was a reason why the framers of the Constitution were not content with the words, "shall be expressed in the title", or "shall be described in the title", etc., ordinarily used by other states, but, in order to emphasize the importance of this provision, used the words, "shall be **clearly expressed** in the title".

Hence it appears that, as the initiative and referendum powers are reserved to the people, and as the people reserve unto themselves the right to initiate laws and to reject laws enacted by the Legislature, the purpose of this constitutional provision is not only to give clear notice to the legislative body, but it must give clear notice to the people, as to what an act may contain.

In states which do not have the initiative and referendum and where the power is not reserved to the people to reject legislative acts, states which provide merely that the subject of an act shall be **"expressed** in the title", not **"clearly expressed** in the title", as provided in our Constitution, it has been held that the purpose of such provision is to give notice, not only to the legislative body, but to the public also, in order that they might petition or protest to the Legislature against such an act. Besides, it has been held in most states that such provisions are mandatory. 25 R. C. L., sec. 87, p. 840. And it occurs to us that if they are not mandatory, then they are utterly useless and have no purpose in our Constitution.

Hence, bearing all the foregoing reasons in mind, it must be seen that the title of an act is of more importance to the electorate of this state and that the question of sufficiency of the title will be subjected to closer scrutiny by the courts of this state than in states wherein the powers of initiative and referendum and the power to initiate laws and reject acts of the Legislature are not reserved.

The provision has an emphasized importance in this state. And there is yet another constitutional provision which has a material and forceful bearing particularly upon the question under consideration, viz., section 1, art. 14, of the Constitution, which is as follows:

"Section 1. Bank Commissioner—Term—Power. General laws shall be enacted by the Legislature providing for the creation of a Banking Department, to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate, with sufficient power and authority to regulate and control all state banks, loan, trust and guaranty companies, under laws which shall provide for the protection of depositors and individual stockholders."

It is apparent from the foregoing provision that the uppermost object and intention of the framers of the Constitution was to direct the Legislature to create a Banking Department, under the control of a Bank Commissioner, with power and authority to regulate and control said banks, **under laws providing for the protection of depositors and individual stockholders.** The one express purpose of the provision was to direct the Legislature to create a Banking Board, with power to regulate banks; but how? "Under laws which shall provide for the protection of depositors and individual stockholders." Under this section there is but the one express purpose in creating a Banking Board and giving it authority to regulate banks, etc., and that purpose is the protection of depositors and individual stockholders. This was the one central idea, and, in obedience to this constitutional direction, the first Legislature after statehood, among the very first bills enacted, passed the act entitled:

"An Act creating a state banking board establishing a depositors' guaranty fund to insure depositors against loss when the bank becomes insolvent, prescribing the qualifications of officers and directors, fixing the salary of Bank Commissioner and his assistants, and providing for more frequent examination, fixing penalty for embezzlement. limiting the amount of bank funds that can be loaned to any one person, corporation, or firm; declaring an emergency."

Thus the central purpose of the aforesaid constitutional direction was vitalized and put in force by the Legislature. The act provided for an assessment against state banks based upon the average daily deposits, for the purpose of creating a depositors' guaranty fund, and providing that when a bank became insolvent and was taken charge of by the Bank Commissioner, such Bank Commissioner should first pay the depositors out of the depositors' guaranty fund, and that the depositors' fund should then have a first lien upon the assets of such bank until it was reimbursed for the amount paid out to depositors, and providing, further, that in the event the assets of such bank were insufficient to fully reimburse the depositors' guaranty fund for the amount thus paid out to depositors, it should have a first

lien upon the liability of stockholders until it was fully reimbursed.

This one idea, this one central purpose, was kept in force throughout all subsequent amendments to the act, until the passage of the act in question, viz., chapter 58, Sess. Laws 1915. Under section 5 of said chapter 58, the section under consideration here, surety companies are given an equal preference lien with the depositors' guaranty fund upon the assets of a failed bank, thereby lessening the rights of the guaranty fund to first reimburse itself, and splitting in twain the central constitutional direction. We say this because it is possible to give said section a far greater effect. For example, if the proceeds of the assets of an insolvent bank be divided in five parts, and the pro rata share of the surety companies be equal to four of such parts, then the bank guaranty fund would get only one part. This was never intended by the constitutional provision, nor by the statutes enacted in obedience to its direction, unless it be by an act free of all other constitutional limitations and having a title so clearly expressive of the subject as to reasonably apprise, not only the legislative body, but the electorate at large as to the provision of the act. To requote the title to the act in question, to wit:

"An Act to amend sections 267 and 272 of ch. 6, art. 1, of the Revised Laws of the state of Oklahoma of 1910, and to amend section 3, ch. 22, Session Laws of 1913, providing penalties for violations of the banking laws of this state, and to define the powers of the state banking board, and for other purposes; and declaring an emergency."

To any one reading the title alone, it would never occur that a great central purpose of both the Constitution and statute, viz., the protection of depositors in state banks, was to be split in twain and divided fifty-fifty with surety companies.

It is not for the court to say what the Legislature or the public would have done had the title disclosed the hidden wedge in said section 5, but it will suffice to say that the title does not so do.

We are not unmindful of the numerous decisions which have adopted the doctrine of liberal construction in order to avoid the effect of undue restriction upon legislative power. We have examined the leading ones in order to perceive the reasoning therein and to ascertain the conditions and circumstances upon which they rest, but have found none which has sustained a statute having a similar effect to the statute under consid-

eration and a title falling as far short of disclosing such effect as does the title under consideration.

Some of such decisions appear to be ultra liberal, but a major per cent. of the most liberal ones have been to sustain some moral or health protective policy. Many of them have been to sustain some act or provision of the liquor laws; but the degree of liberality which might be soundly applied in sustaining a great moral policy should not be applied in sustaining a statute the effect of which is to impair or destroy a great economic policy. In fact, the converse of the proposition might be the sounder rule; that is, whatever degree of liberality is justified in sustaining a great moral law, a corresponding degree of strictness might be justified in setting aside a statute which has the effect of destroying a needful economic law.

Likewise we have examined many authorities having a tendency toward strict construction in order to prevent unwholesome and mischievous laws. 25 R. C. L. 108, page 864; Id., 94, page 847; Cooley's Constitutional Limitations (7th Ed.) par. 1, pages 203, 4; Lewis' Sutherland, Statutory Construction (2nd Ed.) sec. 111, page 184. But whatever the rule of construction in proper cases may be, we have before us a great economic policy, a policy engraved in our organic law, and vitalized in our statute, the definite central purpose of which is the protection of depositors in state banks. We have under consideration, also, a statute the effect of which, in any and every case, is violative of such policy and in conflict with its purpose; a statute which it is possible to carry so far as to virtually defeat such purpose, and the title to which statute does not express the possibilities of its mischief. It gives no hint of such possibilities. It does not even intimate the unavoidable effect of such statute. To give such statute any effect whatever is to damage the depositors' guaranty fund to the same extent.

If the objects of this statute are to receive any benefit therefrom, the depositors' guaranty fund must unavoidably sustain a loss to the same extent. For example, if 99 per cent. of the deposits in a failed bank are paid by the guaranty fund, and 1 per cent. is paid by the surety companies, then the guaranty fund loses only its preference right to one per cent. of what was intended to be given it by former statutes, viz., a first lien upon the assets and stockholders' liability; but should the surety companies pay the 99 per cent., and the guaranty fund pay only one per cent., then the guaranty fund must lose 99 per cent. of what the Constitu-

tion and former statutes intended it should have.

The title to the statute under consideration does not indicate, nor, standing alone, does it even intimate, that the body of the act contains a provision whose tendency is to defeat the central purpose of an economic policy of the state.

We are not holding that the Legislature would have had no power to enact the statute in question, if it appeared to the Legislature that there was a public demand for such provision, but do hold that the title materially fails in expressing the subject of the act.

For the reasons herein, it is the opinion of this court that the judgment of the trial court was correct in holding that upon the pleadings and stipulation of facts submitted, said section 5, ch. 58, Sess. Laws 1915, was violative of and repugnant to section 57, art. 5, of the Constitution, and void.

Inasmuch as the statute is void as to section 57, art. 5, of the Constitution, it follows that plaintiff in error has no right of recovery, and it is unnecessary to discuss the questions raised as to other constitutional questions.

The judgment is affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, NICHOLSON, and MASON, JJ., concur.