**In the Matter of the Habeas Corpus of Edward E. WELLS, Petitioner.**

**In the Matter of the Habeas Corpus of Louie Esquire HAYES, Petitioner.**

**Nos. A–12685, A–12686.**

Criminal Court of Appeals of Oklahoma.

Jan. 28, 1959.

Leon J. York, Everett E. Berry, Stillwater, for petitioners.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for the State.

POWELL, Presiding Judge.

Edward E. Wells and Louie Esquire Hayes have filed in this court their separate petitions each seeking a writ of habeas corpus requiring their release by R. A. Wilson, Sheriff of Pawnee County, from incarceration in the county jail of said county on account of two certain charges in the county court, to wit:

(1)   Case No. 8761, wherein they are charged jointly with the crime of delivery of amphetamine, in violation of Title 63, § 465.2, Oklahoma Statutes Annotated; and

(2)   Case No. 8762, wherein they are charged jointly with the crime of possession of amphetamine, in violation of Title 63, § 465.2, Oklahoma Statutes Annotated.

It is further alleged that defendants prior hereto sought separate writs of habeas corpus from the district court of Pawnee County, but that said writs were denied, and hence the filing of original petitions here.   20 O.S.1951 § 41; Okl.Const. art. 7, §§ 2 and 10.

The matters came on for hearing on November 12, 1958.   There was received in evidence a transcript of testimony taken before Hon. O. S. Palmer, County Judge, in hearing on motion to suppress held on October 24, 1958; also affidavit of Roy E. Waggoner, M.D.   The parties were granted time in which to file further briefs, and the case was submitted.   All briefs have now been received and studied.   The two cases have been consolidated for purpose of opinion.

There is one main proposition that has been raised by petitioners at all steps in the proceedings in the county court of Pawnee County, in the district court of Pawnee County and here as foundation for the writ sought, to wit: That the statutory provisions forming the basis for the within prosecutions and being the Act of 1953 Legislature, Title 63, § 465.2 O.S.A., Chapter 10, Title 63, p. 309, Session Laws 1953, House Bill 575, is void, unconstitutional, and of no force and effect; for the reason that the title to said act makes no mention of the word "amphetamine"; that the title re-

fers only to barbiturates and that amphetamine is an entirely different drug from a barbiturate; that amphetamine has a stimulating effect upon the nervous system, whereas a barbiturate has a hypnotic, or somnifacient, effect upon the central nervous system; that there is no connection whatsoever between the two drugs, and by reason of the fact that the word "amphetamine" was not used in the title of the act the same violates the constitutional provisions of the Oklahoma Constitution, to wit: Article 5, § 57.

The Attorney General in each case has filed a response to rule to show cause issued by this court, which are in the form of general denials, stating that the material allegations of the petitions are not sufficient to form the basis for the relief sought.

■ The question of the jurisdiction of this court to determine the constitutionality of a law in habeas corpus proceedings has had the attention of this court many times. In Ex parte Strauch, 80 Okl.Cr. 89, 157 P. 2d 201, 202, we said:

"While the Criminal Court of Appeals does not look with favor upon the testing of the constitutionality of a statute by habeas corpus, nevertheless it has the authority to pass upon the constitutionality of a statute in such a proceeding, and will exercise that Authority where necessity exists and the public good demands.

"Criminal Court of Appeals is proper court to determine constitutionality of penal statute."

See also Tilghman v. Burns, 91 Okl.Cr. 359, 219 P.2d 263; Ex parte Olden, 88 Okl. Cr. 56, 199 P.2d 228.

The first question presented by the pleadings is whether amphetamine is a barbiturate.

James Radley, a licensed pharmacist, testified on motion to suppress in the county court, that the drug amphetamine was not a barbiturate. He was asked: "Would you state the difference between the two?" And answered: "Amphetamine is a central nervous system stimulant. A barbitu-

rate would be exactly the opposite, or depressing. Amphetamine will keep a person awake, and a barbiturate, in reverse, would put a person to sleep, or sedate him, depending on the amount administered."

There was received in evidence an affidavit from Roy E. Waggoner, M.D., in which he said:

"I am familiar with the properties and uses of barbiturates and their derivatives and amphetamines and their derivatives, including the salts and compounds of each drug. I have used both drugs during the entire time I have practiced medicine and there is no connection or relationship between barbiturates and amphetamines. A barbiturate is used as a sedative to the central nervous system, whereas amphetamine is used as a stimulant to the central nervous system."

We have also consulted Blakiston's New Gould Medical Dictionary, 1949 edition, and find that amphetamine, after statement as to chemical formula, is thus defined: "A colorless, volatile, mobile liquid. Inhalation of its vapors causes shrinking of the nasal mucosa in head colds, sinusitis, and hay fever." It is also stated that benzedrine is a trade mark for amphetamine.

Concerning barbiturates, it is said: "Barbiturates are used in medicine as hypnotic and sedative drugs, but are not analgesics unless administered in relative large doses. Modification in their structure influence the power and rapidity of their effects. The therapeutic effect of these drugs are extended upon the higher centers of the brain, and they do not usually cause injury to the heart, circulation or kidneys. They are common allergens."

While it would appear that both barbiturates and amphetamine have the common property of effecting the central nervous system, we must, from the evidence before us, conclude that as contended by petitioners, the effects of the two drugs is entirely different; and that amphetamine is an entirely different drug from a bar-

biturate. There remains, then, the question of the sufficiency of the title to the amended (1949) act and the amendatory (1953) act.

In commencing our consideration of the issue, we must agree with certain general principles heretofore adhered to by this court, and called to our attention by the Attorney General, and being, as said in Ex parte Houston, 93 Okl.Cr. 26, 224 P. 2d 281, 283, that "Where the jurisdiction of this court is invoked by habeas corpus to declare void a statute or ordinance, every presumption is indulged in favor of the validity of the statute or ordinance. This court will not declare such to be void if it can reasonably be sustained."

Also, as said in Reeves v. State, 36 Okl. Cr. 186, 253 P. 510: "Every presumption will be indulged in favor of the constitutionality of a statute. This presumption is especially strong where the statute has long been acquiesced in, or where great injury would result from declaring it void."

The title to the amendatory act of the 1953 Legislature complained of reads:

"Chapter 10 — Narcotic drugs. House Bill No. 575 (p. 309 S.L.1953).

"An Act amending Sections 465.1, 465.2, 465.3, 465.4, 465.5, 465.6, and 465.8, Title 63, Oklahoma Statutes 1951; defining certain terms; prohibiting certain acts with exceptions; providing for keeping of records; providing penalties; and declaring an emergency."

The sections of Title 63 O.S.1951 mentioned were enacted by the 1949 Legislature, pp. 430–433, the title to said act reading:

"Chapter 10a, House Bill No. 162. An Act relating to the sale and distribution of barbiturates; defining certain terms; prohibiting certain acts with exceptions; providing for keeping of records; authorizing the State Board of Pharmacy to promulgate regulations; providing penalties; providing that the provisions of this Act shall be severable; and repealing O.S.

Accumulative Supplement 1947, Title 63, paragraphs 328.1 and 328.2."

It will at once be noted that in fact neither the heading to the 1949 Act of the Legislature, nor the heading to the 1953 amendatory Act mentioned amphetamine. But amphetamine is mentioned in the body of the 1953 amendatory act and it is made unlawful for anyone, except as specifically designated, to possess amphetamine unless by authority of a doctor's prescription, or to deliver it except on a doctor's prescription. So, as argued by petitioner, clearly the act purports to regulate the sale of a drug that is not mentioned in the title of the act, and such being the case, the question is whether or not the 1953 act is unconstitutional as to amphetamine.

Article 5, § 57 of the Oklahoma Constitution reads:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

The Attorney General argues that the 1953 Act challenged by the petitioners extends the provisions of the 1949 Act, and that both acts relate to "the same general subject" and that the title of the 1953 Act is sufficient "to cover the new matter therein contained, that is, the modification of the term 'barbiturate', and the definition of the term 'amphetamines'."

It is further urged that the act has been on the statute books for a period of ap-

proximately five years, without its validity being questioned and therefore there is a strong presumption that the act is valid.

In support of its first contention, the State cites the case of Johnson v. Conley, Okl., 259 P.2d 1021, where it was held, par. 1 of the syllabus:

"A new act may extend the provisions of an old act where both relate to the same general subject and where the title of the new act is sufficient to cover the new matter contained therein".

Also cited is the case of First National Bank of Alex v. Southland Production Co., 189 Okl. 9, 12 P.2d 1087, 1089, wherein, in the fifth paragraph of the syllabus it is said:

"A particular section of the law may be broadened by amendment so as to bring within its provisions matters which could have been within it originally without contravention of the provisions of section 57, art. 5, of the Oklahoma State Constitution."

We approve the principles of law quoted from the two cited cases, but a reading of the cases will disclose factual differences that make the principles inapplicable to the question presented here for solution.

It has been noted in the within case that only one subject is dealt with in the 1949 act, to wit: "An Act relating to the sale and distribution of barbiturates." As argued by petitioners, no other subject or drug is treated or discussed in the act, and the title of the 1953 amendment makes no mention of any other drug or subject. It specifically is not an act relating to the sale and disposition of drugs that affect the nervous system. It merely amends certain sections of the 1949 act, as that act read.

The Supreme Court of Oklahoma has many times construed the provisions of Art. 5, § 57 of the Oklahoma Constitution.

In State ex rel. Short v. Johnson, 90 Okl. 21, 215 P. 945, the Bank of Sentinel became insolvent and its affairs were taken over by the Bank Commissioner. The United States Fidelity and Guaranty Company was surety for the Bank for certain deposits of the county funds of Washita County. The insurance company reimbursed the county for the loss, and when the Bank Commissioner began to liquidate the assets of the Bank he paid the insurance company $10,000 as its pro rata share of the assets and then commenced an action against the stockholders for the balance of the deficiency. The stockholders questioned the constitutionality of the act of the Legislature, which act read:

"An act to amend sections 267 and 272 of chapter 6, article 1, of the Revised Laws of the State of Oklahoma of 1910, and to amend section 3, chapter 22, Session Laws of 1913, providing penalties for violation of the banking laws of this state, and to define the powers of the State Banking Board, and for other purposes; and declaring an emergency." Session Laws 1915, c. 58.

In the body of the act provision was made for pro rata division of the assets to the insurance company, but nothing was said regarding this subject in the title. The court held that the act violated Article 5, Section 57 of the Oklahoma Constitution.

And see Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okl. 177, 90 P.2d 899, 900. Legislation was enacted during the depression days by the 1937 Legislature, known as the minimum wage law. Action was brought to test the constitutionality of the statute and particularly that portion of the statute fixing minimum wages for men. Headnotes 10 and 11 clearly express the action of the court, where it is said:

"In determining whether an act's title complies with the constitutional requirements that the subject of an act shall be clearly expressed in the title, the title must be construed with reference to language used in it alone, and not in light of what body of act contains. Okl.St.Ann.Const. art. 5, § 57.

"The minimum wage law's title stating that it is an act prohibiting employment of men, women, or minors in any industry or occupation within state under conditions of labor detrimental to their health and morals, and prohibiting employment of women workers in any industry within state at wages not adequate for their maintenance, does not authorize minimum wage provisions for men and minors, in view of constitutional requirement that the subject of an act shall be clearly expressed in its title, and to that extent the act is unconstitutional. 40 Okl.St.Ann. § 261 et seq.; Okl.St. Ann.Const. art. 5, § 57."

The opinion should be read for the reasons supporting the doctrine. In State ex rel. Short v. Johnson, supra [90 Okl. 21, 215 P. 947], the court quoted with approval the following excerpt from Cooley on Constitutional Limitations defining the purposes of such constitutional provisions, as follows:

"The purpose of these provisions was, first, to prevent hodgepodge or log-rolling legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

■ See also State v. Nealy, 50 Okl.Cr. 63, 296 P. 510, and see from this court Brown v. State, Okl.Cr., 266 P.2d 988, where this court approved the principle that where the body of act is broader than its title, the act is unconstitutional as to such provisions. This would apply as well to an amendatory act.

■ The rule has been well stated in 82 C.J.S. Statutes § 220, page 381, where it is said:

"If the title of the original act is sufficient to embrace the matters contained in the amendatory act, the sufficiency of the title of the latter need not be inquired into.

"Under such a title, however, showing merely that the act is one to amend or supplement a prior statute, no provision may validly be incorporated in the body of the act which is not within the title of the statute so proposed to be amended or supplemented, unless the title of the original act is also amended to include the matter added by the amendatory or supplemental act."

A long list of supporting citations is given, including three from this State: Riverland Oil Co. v. Williams, 176 Okl. 448, 56 P.2d 1167; Watchorn Oil Co. v. Pendergrass, 177 Okl. 21, 56 P.2d 1170; Murch Bros. Const. Co. v. Cupp, 177 Okl. 102, 57 P.2d 852. And see Board of Water Engineers of State of Texas v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722; Ex parte Masters, 126 Okl. 80, 258 P. 861; Pottawatomie County v. Alexander, 68 Okl. 126, 172 P. 436.

■ The remaining question is, does the fact that the 1953 Act had been in effect for around five years at the time the petitioners herein were charged, without having ever been challenged, force an exception and make valid the provisions in the body of the amendatory (1953) act mentioning for the first time "amphetamine"?

The correct rule, it appears to us, is set out in Kucker v. Sunlight Oil & Gasoline Co., 230 Pa. 528, 79 A. 747, 749, Ann. Cas.1912A, 503, by Moschzisker, J.:

"While a court should hesitate to declare a statute unconstitutional until clearly satisfied of its invalidity, and where it has been on the statute books for many years the hesitation

should be all the greater, yet, if such an act is plainly in conflict with the organic law of the state, old age cannot give it life, and, when the issue of its constitutionality is properly raised, it must be declared void."

See also 11 Am.Jur. § 81, p. 703; 12 C.J. p. 798 § 223; 16 C.J.S. Constitutional Law § 98, p. 387.

We note from the allegations in the information that the petitioners are charged with delivering a package of amphetamine to one of the football players from the State Penitentiary at McAlester, Oklahoma, at a football game being played at Pawnee. Also attached to the response is the F. B. I. record covering the petitioners, in which is set out a long list of separate crimes committed by petitioners. They appear to be habitual criminals without hope for rehabilitation. And in effort to prevent the lowering of amount of bonds fixed by the county judge, there is attached to the response newspaper accounts of the use by dope addicts and youths of nasal inhalers containing amphetamine. It is made to appear that the drug amphetamine is a very harmful drug, and that it is to the best interest of people that it be prohibited except upon a licensed physician's prescription.

■■ Conceding that the drug amphetamine is harmful and that the Legislature recognized this by an attempt in the 1953 amendatory act to regulate and restrict its use, still, from what we have said, a void provision of the statute cannot be made valid because of the apparent need for the law attempted to be adopted. Nor can the fact that the persons forcing the issue may be persons with unsavory records cause a relaxation of the rules of statutory construction that we have discussed.

It is our opinion that the 1953 amendatory act (Chap. 10, Tit. 63, p. 309, S.L.1953, H.B. 575) so far as it covers the drug amphetamine is unconstitutional and void, as violating Art. 5, § 57, Okl.Const., in that the amended act (1949) makes no mention of the word amphetamine, or that it was aimed at drugs that affect the nervous system; nor does the amendatory act (1953) in its heading make any mention of amphetamine. For such reasons the writ of habeas corpus prayed for by the petitioners must issue.

The County Judge of Pawnee County, Oklahoma, is therefore ordered and directed to dismiss case No. 8761 in his court wherein Edward J. Wells and Louie Esquire Hayes are defendants, and to also dismiss case No. 8762 wherein said Edward E. Wells and Louie Esquire Hayes are defendants.

NIX and BRETT, JJ., concur.